USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/22/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
                                                              :
    UNITED STATES OF AMERICA,                                 :
                                                              :
                     -v-                                      :          1:23-cr-320-GHW
                                                              :
    SLAVA (STANLEY) KAPLAN,                                    :              ORDER
                                                              :
                                    Defendant.    :
--------------------------------------------------------------X

GREGORY H. WOODS, United States District Judge:

On May 20, 2026, Slava Kaplan, acting *pro se*, filed an application for early termination of his supervised release. Dkt. No. 135 (the "Application").[1] Dr. Kaplan asserts that he has now served approximately 24 months of his supervised release without a violation. *Id.* at 2, 4.[2] He states that he has restored his right to practice medicine "in several jurisdictions, including New York, Florida, Tennessee, South Carolina, Oklahoma, Louisiana, Missouri, and Virginia." *Id.* He has returned to the practice of medicine. *Id.* at 3. He argues that his "demonstrated rehabilitation, accountability, lawful conduct, and professional reintegration" all weigh in favor of early termination of his supervised release. *Id.* at 4-5.

Dr. Kaplan's request appears to be motivated in part by a desire to restore his licensure in Arizona. He writes that "the Arizona Medical Board has conditioned restoration to unrestricted licensure upon successful termination of federal supervision." *Id.* at 4. The Arizona Medical Board's order that appears to have provoked the request states in part that "Respondent's request for release must provide the Board with evidence establishing that he has successfully completed all of the terms and conditions of the Sentencing Order and has been granted an order terminating his

---

[1] Because Dr. Kaplan is proceeding *pro se*, the Court construes the Application "liberally to raise the strongest arguments it suggests." *Nielsen v. Rabin*, 746 F.3d 58, 63 (2d Cir. 2014) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)).
[2] Page references are to ECF pagination.

probation." *Id.* at 14.

At the Court's request, the United States filed a response to Dr. Kaplan's Application on May 27, 2026.  Dkt. No. 137.  While noting that the Probation Department did not object to Dr. Kaplan's request, the Government opposed Dr. Kaplan's request on numerous grounds.

Section 5D1.4(b) of the 2025 Sentencing Guidelines provides that a court "may" "[a]ny time after the expiration of one year of supervised release and after an individualized assessment of the need for ongoing supervision," "terminate the remaining term of supervision and discharge the defendant if the court determines, following consultation with the government and the probation officer, that the termination is warranted by the conduct of the defendant and in the interest of justice."  U.S.S.G. § 5D1.4(b).  Designed "to encourage appropriate use of early termination," the policy statement "restates the court's authority under 18 U.S.C. § 3583(e)(1) to terminate the remaining term of supervision at any time after one year of supervised release if the court determines, following consultation with the government and the probation officer, that termination is warranted by the conduct of the defendant and in the interest of justice."  U.S. Sentencing Commission, Amendments to the Sentencing Guidelines, April 30, 2025, at 34.  "Application Note 1(B) specifies factors a court might consider in determining whether to terminate the remaining term of supervised release."  *Id.* at 35.

As described above, the policy statement in Section 5D1.4(b) restates the Court's existing authority to terminate a term of supervised release early pursuant to 18 U.S.C. § 3583(e)(1).  Section 3583(e) provides that a court may, after considering the factors set forth in 18 U.S.C. § 3553(a), "terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release . . . if it is satisfied that such action is warranted by the conduct of the defendant released and in the interest of justice."  18 U.S.C. § 3583(e)(1).  In evaluating an application, the court must consider the relevant factors under 18 U.S.C. § 3553(a),

"such as deterrence, public safety, rehabilitation, proportionality, and consistency, when it decides to modify, reduce, or enlarge the term or conditions of supervised release." *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997).  District courts are not required to make specific findings of fact with respect to the relevant 3553(a) factors.  Instead, "a statement that the district court has considered the statutory factors is sufficient." *United States v. Gammarano*, 321 F.3d 311, 315-16 (2d Cir. 2003) (quoting *United States v. Gelb*, 944 F.2d 52, 56-57 (2d Cir. 1991)) (internal quotation and alteration marks omitted).

Early termination "is not warranted as a matter of course." *United States v. Fenza*, No. CR 03-0921(ADS), 2013 WL 3990914, at *2 (E.D.N.Y. Aug. 2, 2013).  "Full compliance with the terms of supervised release is what is expected of a person under the magnifying glass of supervised release and does not warrant early termination." *Id.*

After reviewing the materials presented to the Court in connection with the defendant's sentencing in this case and the facts reported in the Application and the Government's opposition, and considering the relevant factors under 18 U.S.C. § 3553(a) and the application note to Section 5D1.4(b), the Court concludes based on an individualized assessment of Dr. Kaplan's case that early termination of Dr. Kaplan's supervised release is inappropriate at this time.

The Court applauds the fact that there are no reported instances in which Dr. Kaplan has violated the conditions of his supervised release, and that Dr. Kaplan has engaged in appropriate prosocial activities—such as his continued employment.  The Court recognizes that the defendant, as a practicing medical doctor, should have the capacity to lawfully manage his behavior.  At the same time, however, the Court believes that supervised release remains useful to achieve that purpose, given that Dr. Kaplan was also a practicing physician when he committed his crime.

In his Application, Dr. Kaplan argues that the "extensive oversight" of his professional conduct by medical licensing boards has the effect that "federal supervision functions largely as

redundant oversight rather than a necessary rehabilitative mechanism." Application at 4. This argument is head-scratching, given that there is no basis for the Court to conclude that the concerns of medical licensing boards are the same as those of the Court and the probation department. And, of course, the oversight provided by such boards in the past was not effective in preventing Dr. Kaplan from committing his crime. The Court believes that supervised release will continue to help protect the public and to support Dr. Kaplan's rehabilitation.

The Court has considered the applicable factors under 18 U.S.C. § 3553(a) and concludes that Dr. Kaplan's application should be denied. Dr. Kaplan committed a serious offense and made away with nearly $500,000 in illegal gains—money that he has not yet paid back in full. Early termination of supervised release would not satisfy the requirements of the statute, in particular given the nature of the crime and the need for continued personal deterrence.

Dr. Kaplan's Application seems to be predicated in part on a desire to obtain licensure in Arizona. As noted above, the Arizona Medical Board's order requires that Dr. Kaplan's probation be terminated. It also requires that he have "successfully completed all of the terms and conditions of the Sentencing Order." Application at 14.

The Court does not purport to interpret the requirements of the Arizona Board's order. But the Court can describe the requirements of its own judgment. The judgment requires that Dr. Kaplan pay to the United States a total of $472,053.61. Dkt. No. 81. The Court ordered that he make monthly payments toward his forfeiture obligations in an amount "equal to 10% of his gross monthly income starting upon his release from prison." *Id.* That is the minimum amount that Dr. Kaplan must pay. The Court has not authorized Dr. Kaplan to pay any lesser amount.

The Court observes that in Dr. Kaplan's Application, he has presented evidence that he made a $200 payment toward his forfeiture obligation on May 19, 2026. Dkt. No. 135-9. That implies that Dr. Kaplan's gross monthly income for the relevant period was $2,000. Dr. Kaplan

4

represents that he is in compliance with his payment obligations. The Court is not able to evaluate whether Dr. Kaplan is complying with the requirements of the judgment—that is, whether he is paying at least 10% of his gross monthly income toward his forfeiture obligation, as required. The Court assumes that the Government and the Probation Department will bring any issues that require action by the Court to the attention of the Court.

Having duly considered all of the applicable factors, the Court concludes that there is not a sufficient basis to terminate Dr. Kaplan's supervised release early. The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 135 and to mail a copy of this order to Dr. Kaplan.

SO ORDERED.

Dated: June 22, 2026
New York, New York

_____
GREGORY H. WOODS
United States District Judge